RECK MILK COMPANY, A NEW JERSEY CORPORATION, PROSECUTOR, v. DAMON G. HUMPHREYS, FLOYD E. BECKER, EDITH P. COOKE, WILLIAM J. LAUDERDALE AND JOHN C. WELSH, CONSTITUTING THE MILK CONTROL BOARD OF THE STATE OF NEW JERSEY, AND THE MILK CONTROL BOARD OF THE STATE OF NEW JERSEY, RESPONDENTS.

RECK DAIRY COMPANY, A NEW JERSEY CORPORATION, PROSECUTOR, v. DAMON G. HUMPHREYS, FLOYD E. BECKER, EDITH P. COOKE, WILLIAM J. LAUDERDALE AND JOHN C. WELSH, CONSTITUTING THE MILK CONTROL BOARD OF THE STATE OF NEW JERSEY, AND THE MILK CONTROL BOARD OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued January 21, 1938—Decided February 16, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *George A. Cella.*

For the respondents, *David T. Wilentz,* attorney-general (*Edward W. Currie,* assistant attorney-general, of counsel).

The opinion of the court was delivered by

PERSKIE, J. Pursuant to stipulation of respective counsel and orders of this court, the two rules to show cause in these

cases are treated as though writs of *certiorari* had been granted, and depositions taken under the rules to show cause are treated as though presented upon the return of the writs of *certiorari*. The causes, therefore, are before us for final determination upon the merits.

The Reck Milk Company, a corporation of the State of New Jersey (hereinafter called "Milk Company"), seeks to review respondents' order denying its application for a renewal of a license to engage in business as a milk dealer for the year beginning July 1st, 1937, and ending June 30th, 1938; and the Reck Dairy Company, also a New Jersey corporation (hereinafter called "Dairy Company"), the other prosecutor, seeks similar review of respondents' order denying its application for a license to operate as a subdealer for the same year. The "Milk Company" processes and bottles the milk purchased from the farmer, and the "Dairy Company" hauls the milk to the "Milk Company" from the farm or from assembly points to which the farmer has delivered the milk.

Each prosecutor originally filed an application with the milk control board of our state seeking a renewal of its license pursuant to 2 *Rev. Stat.* (1937) *App.* A:8-24, 28. *Pamph. L.* 1935, *ch.* 175, *p.* 412, as amended by *Pamph. L.* 1937, *ch.* 56, *p.* 156. Orders to show cause why the applications should not be denied, or if issued, be conditional, were promulgated, and hearings, some of which prosecutors refused or failed to attend although they had notice thereof, were held. Upon the conclusion of the hearings, the respondent board, on August 18th, 1937, filed its determinations and orders denying both applications. Thereafter, on September 21st, 1937, each prosecutor obtained a rule to show cause why a writ of *certiorari* should not issue. On October 6th, 1937, the rules were dismissed upon motion, for failure to prosecute. Later, however, on October 14th, 1937, the order dismissing these rules was vacated; the rules to show cause were continued, and as already indicated, the causes are now to be treated as though writs of *certiorari* were allowed.

The "Milk Company" assigned eighty-nine reasons why respondents' order denying its application for a license

"should be reversed, set aside, and for nothing holden." The order attacked recites, in substance, the procedure taken, and sets forth facts and findings to the effect that the "Milk Company" violated an order of the board (order D-5) in that it deducted eight cents per hundredweight in payments to grade B milk producers, and twelve cents per hundredweight in payment to grade A milk producers. These deductions, the board found, were made from the minimum producer prices fixed by the board in its official orders C-14, D-5, D-15 and D-17 and were unauthorized because these orders forbade deductions for transportation of milk purchased by companies, such as prosecutor's, from producers, when the milk has been delivered, as it was here, by the producer to platforms and other assembly points used by the prosecutor company. The board further found that prosecutor refused to purchase milk in accordance with these orders; that it refused and failed to furnish or pay haulage or transportation charges from the various assembly points to its plant; that it unlawfully caused such charges to be borne by the producers of the milk; that, from the minimum prices set forth in the aforementioned official orders and in official orders D-19, D-20 and D-24 prosecutor unlawfully deducted cartage charges; that by such actions, prosecutor violated 2 *Rev. Stat., supra, App.* A:8-23 (chapter 175, *Pamph. L.* 1935, § 501, as amended by chapter 56, *Pamph. L.* 1937); and that by failing to file certain reports, prosecutor also violated 2 *Rev. Stat., supra, App.* A:8-31 (chapter 175, *Pamph. L.* 1935, § 607, as amended by chapter 56, *Pamph. L.* 1937). In fine, the board found that prosecutor had continued "in a course of dealing of such nature as to satisfy the board of an intent to deceive or defraud stores, producers * * *." Upon all of these facts or findings, the application for a license for the year 1937-1938 was denied.

The "Dairy Company," the other prosecutor in these cases, sets forth fifty-nine reasons why a similar order denying its application for a license should be set aside. The order affecting this prosecutor likewise details the procedure taken, and also sets forth the facts and findings of the board with respect to the "Dairy Company." These facts and findings

were, in substance, that the applicant was a subdealer which distributed and sold milk obtained from the producers for a price less than that fixed by the board; that it thereby violated 2 *Rev. Stat., supra, App.* A:8-23 (chapter 175, *Pamph. L.* 1935, § 501, as amended by chapter 56, *Pamph. L.* 1937), that it committed acts injurious to trade and commerce in milk; that it was unable or unwilling to conduct the business of receiving, or selling milk lawfully; and finally, that it conducted its business with the intent to deceive or defraud stores, producers, &c. Upon the basis of these findings, this prosecutor's application for a license was likewise denied.

The proofs, carefully examined, amply support both the findings contained in the two orders under review, and the results based upon these findings.

Many of the one hundred and forty-eight reasons assigned in both cases attack, in one way or another, the constitutionality of the act under which the procedure was taken. That act (2 *Rev. Stat., supra, App.* 8:24-28 (chapter 175, *Pamph. L.* 1935, as amended by chapter 56, *Pamph. L.* 1937) is a prototype of and, apart from some few changes, substantially identical with an earlier act (chapter 169, *Pamph. L.* 1933, *p.* 353), the constitutionality of which was upheld by our Court of Errors and Appeals (opinion by Mr. Justice Heher) in *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504; 179 *Atl. Rep.* 116. The decision in that case is controlling so far as the constitutionality of the act now before us is concerned. *Cf. Nebbia* v. *New York,* 291 *U. S.* 502; 78 *L. Ed.* 940; *Paterson Milk Co., Inc.,* v. *Milk Control, &c., New Jersey (Supreme Court),* 118 *N. J. L.* 383; 192 *Atl. Rep.* 838, and see, also, *Supplee-Wills-Jones Milk Co.* v. *Duryee,* 116 *N. J. L.* 75, 79; 181 *Atl. Rep.* 908.

We have carefully considered all other reasons assigned and argued, irrespective of their form or substance, and find them to be without merit.

Leave, therefore, is hereby given to counsel to frame a proper record; and upon the record so framed, both writs of *certiorari* will be dismissed, and the orders of respondent in both cases will be affirmed, with costs.